UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARLYNE HUNTER,

    *Plaintiff*,

v.                                             CASE NO. 12-CV-11257

COMMISSIONER OF                    DISTRICT JUDGE STEPHEN J. MURPHY
SOCIAL SECURITY,                     MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

### I.     RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.     REPORT

#### A.     Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11. 16.)

Plaintiff Darlyne Hunter was 47 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 11, 93, 96.) Plaintiff's employment history includes work as a nurse's aide for two years, medical clerk for one year, data entry clerk for one year, cashier for two years, and an administrative assistant for two years. (Tr. at 130.) Plaintiff filed the instant claims on June 25, 2007, alleging that she became unable to work on March 1, 2004. (Tr. at 93-95, 96-100.) The claims were denied at the initial administrative stages. (Tr. at 22, 23.) In denying Plaintiff's claims, the Commissioner considered a torn ligament in Plaintiff's right knee and affective disorders as possible bases for disability. (*Id.*) On December 14, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Theodore W. Grippo, who considered the application for benefits *de novo*. (Tr. at 11-21, 24-44.) In a decision dated March 23, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 40.) Plaintiff requested a review of this decision on April 26, 2010. (Tr. at 9-10.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 15, 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. at 5-8.) On March 21, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is

multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making

a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe

5

impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2011, and that Plaintiff had not engaged in substantial gainful activity since March 1, 2004, the alleged onset date. (Tr. at 29.) At step two, the ALJ found that Plaintiff's status post injury to ankle, knee and pelvis due to an automobile accident, status post injury to right ankle and shoulder due to fall,

6

and affective disorder were "severe" within the meaning of the second sequential step. (Tr. at 30.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 30-31.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a cashier. (Tr. at 38-39.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of medium work. (Tr. at 31-38.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 40.)

      **E.**    **Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was in a car accident in 1983 that caused "[t]orn ligaments on the right knee, pelvic, [and a] cracked hip," and that resulted in her being hospitalized for "[t]wo and a half months." (Tr. at 14.) Plaintiff returned to work in 1990. (*Id.*) The administrative record contains no medical records to substantiate these statements. In 2004, Plaintiff broke her ankle; after the cast was removed, x-rays revealed that the ankle had healed well. (Tr. at 289-93.)

As noted by Plaintiff, "there are no opinions by plaintiff's doctors," but there are several consultative examinations. (Doc. 11 at 15.) On August 9, 2007, Plaintiff was examined at the request of Disability Determination Services ("DDS") by A. Sadiq, M.D. (Tr. at 201-02.) Dr. Sadiq found Plaintiff's grip strength was 5/5, "[s]traight leg raising and femoral stretch test were negative bilaterally[,]" "[m]uscle strength is grade 5/5[,] [d]eep tendon reflexes intact[,] [t]here were no pathological reflexes[,] [s]ensory examination was intact[,] [and] [c]oordination is intact." (Tr. at 202.) Ranges of motion were normal in her spine, shoulder, hips, and knees. (Tr. at 203-04.) In addition, Dr. Sadiq noted that Plaintiff's gait was "[w]ithin normal limits" and that although she "ambulates with a cane in the right hand[,] [t]here is no difference in the ambulation with this" such that the "patient is not in need of a cane at this point." (Tr. at 202.) Plaintiff was "able to squat

7

halfway[,]" dress and undress, and get on and off the table, but it was "difficult for her to do heel, toe and tandem walking per patient." (*Id.*)

On the same day, Plaintiff was also examined at the request of DDS by L. Imasa, M.D. (Tr. at 210-12.) Dr. Imasa noted that Plaintiff "said that she smokes weed occasionally" and "smokes about one pack of cigarettes daily." (Tr. at 210.) Dr. Imasa noted that Plaintiff "appears to be in fairly good contact with reality," but that her "mood appears to be depressed" and her "affect was constricted." (Tr. at 211.) Dr. Imasa's prognosis was "[g]uarded," noting that Plaintiff "needs treatment, therapeutic intervention and support services." (*Id.*)

A Physical Residual Functional Capacity ("RFC")Assessment was completed on August 27, 2007, by Tariq Mahmood, M.D. (Tr. at 219-26.) The assessment concluded that Plaintiff was able to occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in her ability to push or pull. (Tr. at 220.) Plaintiff was found to be occasionally limited in all postural areas, but there were no manipulative, visual, communicative or environmental limitations established. (Tr. at 221-23.)

A Psychiatric Review Technique ("PRT") completed on October 8, 2007, by Rose Moten-Solomon, diagnosed affective disorders, i.e., bipolar disorder. (Tr. at 229, 232. ) A Mental RFC Assessment also completed that day concluded that Plaintiff is moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to maintain attention and concentration for extended periods, but was otherwise not significantly limited in understanding and memory or sustained concentration and persistence. (Tr. at 243-44.) Plaintiff was found to be moderately limited in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness but was

otherwise not significantly limited in social interaction or adaptation. (Tr. at 244.) The assessment noted that Plaintiff was "prescribed psych meds but does not receive outpatient treatment" and that Plaintiff "retains the mental capacity for simple work activity." (Tr. at 245.)

On April 16, 2009, Plaintiff sought treatment at the Henry Ford Hospital for "foot pain." (Tr. at 321.) Plaintiff's dorsiflexion was "normal all toes" and "plantarflexion [was] normal all toes." (Tr. at 322.) X-rays were taken but there were "no findings[.]" (Tr. at 323.) Plaintiff was discharged the same day with a prescription for Naprosyn. (Tr. at 324.)

At the administrative hearing, Plaintiff testified that she broke her ankle in 2004 and was not able to maintain employment in 2006 or 2007 because she "[k]ept getting severe pains, in and out of hospital due to me standing for X amount of hours." (Tr. at 15-16.) When asked whether the pain is confined to her ankle, Plaintiff added, "[d]izziness, headaches, pain on my ankle, my knee, my right knee, my right hip and back area." (Tr. at 16.) Plaintiff indicated that she takes pain medication, diabetes medication and some medication for depression. (Tr. at 16-17.) Plaintiff also testified that she has a foot problem because a woman's "heel went through my foot and caused nerve damage on my right side of my body, to my neck." (Tr. at 17.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> is capable of performing medium work with the following limitations: all posturals - - that means climbing ramps, stairs, ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching, and crawling - - are limited to occasional; and mentally, the work would be limited to simple.

(Tr. at 19.) The VE responded that such a person could perform Plaintiff's past relevant work as a cashier. (Tr. at 19-20.) The ALJ then asked the VE to assume a person of Plaintiff's background who

9

can lift no more than five pounds and can sit no more than 30 minutes nor stand no more than 30 minutes and who would have frequent interference with concentration, persistence and pace due to pain, as well as drowsiness.

(Tr. at 20.) The VE responded that such a person would not be able to perform any past relevant work nor any other work. (*Id.*) When asked by the ALJ, the VE responded that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (*Id.*)

**F.     Analysis and Conclusions**

**1.     Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to return to her past relevant work as a cashier. (Tr. at 38-39.) The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a

10

claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, the ALJ found that Plaintiff possessed the residual functional capacity to perform a limited range of medium work with some nonexertional limitations. (Tr. at 31-38.) "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ erred in assessing residual functional capacity, in his credibility assessment, and in concluding that Plaintiff is capable of her past relevant work. (Doc. 11 at 14-22.) In addition, Plaintiff requests a remand pursuant to sentence six of 42 U.S.C.

§ 405(g) based on an "Intelligence Testing and Psychosocial Assessment authored by Dr. Elaine Tripi [which] took place after the hearing held in this case." (Doc. 11 at 24.)

### a. Credibility Analysis

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y*

*of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)    [D]aily activities;

(ii)   The location, duration, frequency, and intensity of . . . pain;

(iii)  Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)    Treatment, other than medication, . . . received for relief of . . . pain;

(vi)   Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 32-37.) I suggest that the ALJ's findings are supported by substantial evidence. There is a paucity of objective medical evidence and what medical evidence exists does not point to disabling symptoms. Physical examinations revealed normal findings: Plaintiff's grip strength was 5/5, "[s]traight leg raising and femoral stretch test were negative bilaterally[,]" "[m]uscle strength [was] grade 5/5[,] [d]eep tendon reflexes [were] intact[,] [t]here were no pathological reflexes[,] [s]ensory examination was intact[,] [and] [c]oordination [was] intact." (Tr. at 202.) Ranges of motion were normal in Plaintiff's spine, shoulder, hips, and knees. (Tr. at 203-04.) In addition, Dr. Sadiq noted that Plaintiff's gait was "[w]ithin normal limits" and that, although Plaintiff "ambulates with a cane in the right hand[,] [t]here is no difference in the ambulation with this" and therefore he concluded that the "patient is not in need of a cane at this point." (Tr. at 202.) The RFC Assessment concluded that Plaintiff was able to occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in her ability to push or pull. (Tr. at 220.) In addition, although Plaintiff was found to be occasionally limited in all postural areas, there were no manipulative, visual, communicative or environmental limitations established. (Tr. at 221-23.) More recently, after Plaintiff sought treatment for "foot pain[,]" her dorsiflexion was "normal all toes," her "plantarflexion [was] normal all toes," and x-rays showed "no findings[.]" (Tr. at 321-23.)

As to mental impairments, the examiner, Dr. Imasa, noted that Plaintiff "appears to be in fairly good contact with reality," but her "mood appear[ed] to be depressed" and her "affect was constricted." (Tr. at 211.) However, the only functional capacity assessment noted that Plaintiff was "prescribed psych meds but does not receive outpatient treatment" and that Plaintiff "retains the mental capacity for simple work activity." (Tr. at 245.)

14

I therefore suggest that the ALJ's finding that Plaintiff was not fully credible is supported by substantial evidence and should not be disturbed.

      **b.     Past Relevant Work and RFC Analysis**

I suggest that the ALJ's RFC analysis is also supported by substantial evidence. Plaintiff contends that although the ALJ indicates that his RFC analysis comports with the opinion of Dr. Sidiq in the RFC Assessment, it does not comport because Dr. Sidiq found that Plaintiff could only "partly" squat, rather than occasionally squat. (Doc. 11 at 15-17.) First, I note that Dr. Sadiq stated that Plaintiff was "able to squat halfway" and that she could "partly" bend, stoop, squat and arise from squatting. (Tr. at 202, 205.) The hypothetical limited all postural activities to "occasional." (Tr. at 20.)

I first suggest that there is no glaring conflict between the findings made by Dr. Sadiq and the occasional postural limitation. However, even if the hypothetical were considered inconsistent with the RFC findings, the ALJ was not required to put forth a hypothetical for the VE to consider when determining that Plaintiff could return to her past work as a cashier. *See Wright-Hines,* 597 F.3d at 395; 20 C.F.R. § 404.1560(b)(2). I similarly find Plaintiff's argument that the ALJ did not incorporate the consultative examiner Dr. Imasa's mental health assessment (Doc. 11 at 18-27) to be unpersuasive for the same reason stated above and because Dr. Imasa did not make any observations that would be inconsistent with the RFC Assessment's conclusion that Plaintiff could perform "simple work activity." (Tr. at 210-12, 245.)

Plaintiff was not treated for any mental impairments and was only treated with prescription medications for her physical impairments. Such modest treatment is inconsistent with a finding of disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007). I therefore suggest that the ALJ's RFC findings are supported by substantial evidence.

### c. Sentence Six Remand

Sentence six of 42 U.S.C. § 405(g) allows the district court to remand in light of additional evidence without making any substantive ruling as to the merits of the Commissioner's decision, but only if a claimant can show good cause for failing to present the evidence earlier. *Melkonyan v. Sullivan*, 501 U.S. 89, 100, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). The Sixth Circuit has long recognized that a court may only remand disability benefits cases when a claimant carries his burden to show that "the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is only "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (citing *Foster*, 279 F.3d at 353). In addition, "such evidence is 'material' only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357.

"'Good cause' is shown for a sentence six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.'" *Payne v. Comm'r of Soc. Sec.*, No. 1:09-cv-1159, 2011 WL 811422, at *12 (W.D. Mich. Feb. 11, 2010) (finding evidence generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability was not "new").

In the instant case, I suggest that although the evidence may have been new since it was not in existence at the time of the hearing, good cause has not been shown. Plaintiff contends that "[t]he testing was performed because it was clear to undersigned counsel (who did not represent plaintiff at her administrative hearing) from conversations with plaintiff that there were some cognitive deficits, which definitely needed to be assessed and addressed." (Doc. 11 at 24.) Plaintiff

16

suggests that the evidence "documents claimant's cognitive impairments, which played a role and affected her ability to seek mental health treatment; to answer questions adequately; and to provide accurate histories of both work and medical treatment." (*Id*. at 23.)

However, "there is absolutely no statutory or decisional authority for her unstated, but unmistakable, premise that the alleged incompetence of Taylor's first attorney constitutes 'good cause' in this context." *Taylor v. Comm'r of Soc. Sec.*, 43 F. App'x 941, 943 (6th Cir. 2002); *accord Leitz v. Comm'r of Soc. Sec.*, No. 11-cv-10203, 2012 WL 2003786, at *2 (E.D. Mich. 2012) ("Plaintiff's contention that his former attorney neglected to obtain the treatment records . . . does not sufficiently establish 'good cause.'"). Even if Plaintiff could establish that the evidence is material, good cause has not been shown. I therefore suggest that Plaintiff's request for remand under sentence six should be denied.

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties

are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

            s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
            CHARLES E. BINDER
Dated: March 27, 2013       United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  March 27, 2013      By  s/Patricia T. Morris
              Law Clerk to Magistrate Judge Binder