UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARLYNE HUNTER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Case No. 12-cv-11257

HONORABLE STEPHEN J. MURPHY, III

**ORDER ADOPTING REPORT AND RECOMMENDATION**
(docket no. 17), **DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT** (docket no. 11), **AND GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** (docket no. 16)

Plaintiff Darlyne Hunter filed her complaint seeking review of the final decision of the Commissioner of Social Security, which denied her application for Social Security disability benefits. Hunter and the Commissioner of Social Security ("Commissioner") both filed motions for summary judgment. The matter was referred to a United States magistrate judge for the issuance of a report and recommendation ("Report"). The magistrate judge recommends denying Hunter's summary judgment motion and granting the Commissioner's motion. Hunter objects to this recommendation. For the reasons that follow, the Court will overrule Hunter's objections and adopt the report and recommendation of the magistrate judge.

## BACKGROUND

Hunter filed an application for a period of disability, disability insurance benefits, and an application for supplemental security income on June 25, 2007, alleging that she

became unable to work on March 1, 2004. Tr. 93-100, ECF No. 7. Her claim was initially denied at the administrative stages and was then denied by an Administrative Law Judge ("ALJ") on March 23, 2010, after a video hearing.  Tr. at 27. The ALJ considered Hunter's claim that she is disabled "due to symptoms and limitations associated with a torn ligament and cracked pelvis due to an automobile accident in 1983, a broken right ankle and injured shoulder due to a fall in 2004, and an affective disorder." *Id.* at 32.

In evaluating whether a claimant is disabled under the Social Security Act, the Commissioner follows a five-step sequence. *See* 20 CFR § 416.920.

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *3-4 (E.D. Mich. Oct. 31, 2008) (quoting 20 C.F.R. §§ 404.1520, 416.920); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from

performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). The Commissioner must then show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

At step one, the ALJ found that Hunter had not engaged in substantial gainful activity since the alleged onset date, March 1, 2004. Tr. at 29. At step two, the ALJ found that Hunter suffered from severe impairments including "status post injury to ankle, knee and pelvis due to an automobile accident; status post injury to right ankle and shoulder due to a fall; and an affective disorder," but found that none of her impairments or combination of impairments met or medically equaled one of the listed impairments in the applicable regulations. *Id.* at 30. In making this finding the ALJ noted that "no treating or examining physician has mentioned findings that would equal the criteria for any of the listed impairments." *Id.* He found that Hunter "has moderate restriction or difficulty in activities of daily living, social functioning, and concentration, persistence or pace" and that Hunter reported a range of activities that she was able to complete that were "consistent with no more than moderate restrictions or difficulties." *Id.* In particular, the ALJ noted that Hunter was able to care for her children during the period under consideration without assistance. *Id.* After considering the entire record, the ALJ found that Hunter "has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567 (c) and 416.967(c) except the claimant is able to occasionally balance, stoop, kneel, crouch, crawl,

3

and climb ramps, ladders, ropes, and scaffolds, In addition, the claimant is limited to simple work." *Id.* at 31. In making this finding, the ALJ considered Hunter's symptoms and the extent to which they could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96--4p and 96-7p." *Id.* He found that Hunter's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with above residual functional capacity assessment." *Id.* at 33. The ALJ found that "[o]verall, the claimant's extensive work activity after the alleged onset date, along with the inconsistences in reporting this work activity, shows a lack of credibility on the part of the claimant" and that this also supports the residual functional capacity assessment. *Id.* at 34. Additionally, the ALJ found there was "scant objective evidence" in the record and that the "objective medical evidence that is present describes generally mild or normal findings" and did not support the limitations and debilitating pain Hunter alleged. *Id.*

Finally, the ALJ found that Hunter was capable of performing her past relevant work as a cashier and that she also could perform other jobs existing in significant numbers in the national economy. Consequently, the ALJ found that Hunter was not under a disability as defined in the Social Security Act from March 1, 2004, through the date of his March 23, 2010 decision and was, therefore, not entitled to benefits. *Id.* at 39. Hunter sought review of this decision, and the Appeals Counsel denied her request for review on April 15, 2011, making the ALJ's decision the final decision of the Commissioner. *Id.* at 5-8. Hunter filed her complaint seeking judicial review of the Commissioner's decision on March 21, 2012.

4

Compl. ECF No. 1. The parties each filed motions for summary judgment, which were referred to a magistrate judge for a report and recommendation. The magistrate judge found that substantial evidence supports the Commissioner's determination that Hunter is not disabled and consequently recommends the Court affirm the Commissioner's decision.

## STANDARD OF REVIEW

Review of decisions on dispositive motions made by a magistrate judge is governed by Fed. R. Civ. P. 72(b). The district judge who referred the motion is only required to perform a de novo review of the magistrate judge's findings if the parties "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2).

The Court must affirm the ALJ's findings if they are supported by substantial evidence and the ALJ employed the proper legal standard to evaluate Plaintiff's claims. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal quotation and citation omitted). The substantial evidence standard "presupposes that there is a zone of choice within which decisionmakers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (en banc) (internal quotes and citations omitted). When the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989). The Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir.1984). The Court may not reverse the Commissioner's decision because it would have resolved the case differently or because there is substantial evidence to support a different conclusion than the one reached. *McClanahan*, 474 F.3d at 833.

## DISCUSSION OF OBJECTIONS

Hunter lists four objections to the magistrate judge's Report. The Court will address each in turn.

I. "The Magistrate Judge failed to find error on the part of the ALJ relative to the ALJ's RFC assessment."

Hunter claims the ALJ erred when he stated that the consulting examiner for the state agency, Dr. Sadiq, did not find that Hunter suffered from limitations beyond those contained in the ALJ's residual functional capacity ("RFC") assessment. Obj. at 9. Hunter claims that this was incorrect because Dr. Sadiq reported that Hunter "could only 'partly' bend, stoop, squat and arise from squatting." *Id.* at 10 (emphasis omitted). Hunter then provides the dictionary definition of "partly" and argues that this is inconsistent with the ALJ's assessment that Hunter could "occasionally" balance, stoop, kneel or crouch. *Id.* The magistrate judge addressed this argument suggesting "there is no glaring conflict between the findings made by Dr. Sadiq and the occasional postural limitation." Report at 15. Notably, the ALJ discussed much of Dr. Sadiq's findings and stated that he found it "persuasive that Dr. Sadiq's impressions included a 'history of several impairments and associated pain but these were not entirely supported by his clinical findings, which showed some tenderness and limitations in lumbar range of motion, as well as the ability to squat halfway, a normal gait, negative straight leg raising, and the ability to get on and off the

6

table without difficulty." Tr. at 35. The ALJ then stated that "[a]ll in all, the medical evidence of record from Dr. Dougherty and the consultative physical examiner, Dr. Sadiq, do not indicate that limitations beyond those contained in the above residual functional capacity assessment are warranted in this case." *Id.* The ALJ considered the record as a whole in structuring his hypothetical, and that he did not adopt Dr. Sadiq's use of the word "partly" to describe Hunter's limitations does not demonstrate a lack of substantial evidence for his findings. Hunter's objection on this point is overruled.

Hunter also argues that the ALJ erred by giving little overall weight to the assessment of psychiatric consulting examiner Dr. Imasa "which revealed plaintiff to have significant memory problems, problems with calculations, problems with abstractions, etc." and attributes this to the ALJ's opinion that Hunter's failure to seek treatment for at least a year prior to the hearing was not consistent with her claims of a severe and debilitating mental condition. Obj. at 11. Hunter claims this was error because the ALJ was required to consider whether good cause existed for a plaintiff's failure to seek treatment. *Id.* at 12. But it does not appear that the ALJ discounted Dr. Imasa's diagnosis on this basis, rather, the ALJ recognized that Dr. Imasa diagnosed Hunter "with bipolar disorder and a Global Assessment of Functioning of 40, which indicates some impairment in reality testing or communication or a major impairment in several areas." Tr. at 36. The ALJ stated that he did not accept the doctor's diagnoses and gave them "very little overall weight because Dr. Imasa's own mental status examination found a generally higher level of functioning and even noted that the claimant 'appears to be in fairly good contact with reality.'" *Id.* Thus, the ALJ did not completely ignore the other portions of Dr. Imasa's report. He considered the doctor's diagnosis and gave it little weight because he found it to be internally inconsistent.

7

Additionally, it was not unreasonable for the ALJ to note Hunter's limited treatment history and to find that her failure to seek treatment for her allegedly disabling conditions weighed against her and eroded her credibility. *See White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 283-84 (6th Cir. 2009) (finding that where there was no evidence in the record explaining a claimant's failure to seek treatment for a period of time, a "reasonable mind" might find that the lack of treatment indicated an alleviation of the claimant's symptoms). Although "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state," Hunter fails to point to any evidence in the record that explains her failure to seek treatment after November 2007. *Id.* at 283. This objection is overruled.

    II. "The Magistrate Judge erred in finding that the ALJ's credibility findings were supported by substantial evidence."

Hunter claims the ALJ incorrectly interpreted facts from the record to find that she was not credible. The ALJ noted that Hunter's described daily activities were not as limited as would be expected considering her complaints of disabling symptoms. Tr. at 33. He found that Hunter's "daily activities as reported in the record and at the hearing undermine the claimant's credibility and supports a finding of not disabled." *Id.* Specifically, the ALJ recognized that Hunter reported she "was able to do the following: live with family and friends; read and watch television daily; listen to the radio daily; perform most personal care tasks; prepare simple meals such as sandwiches; leave her home and go outside daily; ride in a car; drive a car for a limited time; and shop in stores for food, clothing, and personal items with assistance." *Id.* He recognized that she "presented certain limitations in her activities of daily living" but found that "the physical and mental demands of the claimant's

8

activities of daily living are consistent with and support" the RFC assessment. *Id.* Hunter argues that the ALJ erred by not recognizing, for example, that reading and watching television are not strenuous activities and that her children were old enough to care for themselves physically. Obj. at 13. She also argues that the inconsistent information she submitted regarding her work activity over the years can be explained by considering her memory problems. *Id.* But simply suggesting alternative explanations for facts in the record is not enough to show a lack of substantial evidence to support the ALJ's decision. As stated above, the Court must affirm the ALJ's findings if they are supported by substantial evidence and this standard "presupposes that there is a zone of choice within which decisionmakers can go either way, without interference from the courts." *Mullen,* 800 F.2d at 545.

Hunter also points to two mistakes the ALJ made regarding facts in the record. The first is the ALJ's reference to an ankle injury Hunter sustained in February 2004, which he stated was "due to an incident where a woman stepped on the claimant's foot with a high heel of her shoe." Tr. 35. He states "[t]he claimant testified at the hearing that she also has had ongoing shoulder pain resulting from this 2004 incident, although this assertion is undermined by the fact that the claimant did not mention that she fell down or that she had any shoulder complaints whatsoever to the Emergency Room physician at Henry Ford Hospital immediately after the high heel shoe incident." *Id.* Hunter points out that the "high heel shoe incident" occurred in 2009 and that she fell and hurt her shoulder and broke her ankle in 2004. Obj. at 14. But Hunter fails to show that this mistake has any affect on the ALJ's observation that although Hunter testified that she had ongoing shoulder pain from the 2004 incident, the records related to the 2004 injury do not reveal complaints of

9

shoulder pain. Hunter does not point to any evidence in the record that she complained to her doctor of experiencing shoulder pain after her 2004 fall.

The second mistake Hunter objects to is the ALJ's statement that on Hunter's last visit to Chass Midtown Clinic "the record shows that the claimant was advised to stop taking Zoloft per one Dr. Mullen, which suggests that anti-depressants were not [sic] longer needed." Tr. at 36. Hunter notes that the ALJ apparently misread the record, which actually stated that Dr. Mullen advised her to stop taking Zoloft, but also dispensed 60mg samples of Cymbalta. Obj. at 14; Tr. 259. That Dr. Mullen dispensed samples of Cymbalta suggests he was considering giving her a different form of medication to treat her depression. But Hunter does not argue that the ALJ's observation that "claimant stopped all treatment around three months after Dr. Imasa's assessment" was erroneous. Tr. at 36. The transcript of the December 14, 2009 hearing reflects that Hunter was asked whether she was taking Zoloft and she replied that she was. *Id.* at 17. But her medical records from Henry Ford Hospital and Medical Centers do not list Zoloft or Cymbalta as active medications on August 12, 2009. *Id.* at 330. She also stated that she had not seen a psychiatrist or a psychologist in at least a year. *Id.* at 18. Thus, the ALJ's assessment that Hunter's limited mental health treatment was consistent with his assessment "but not at all consistent with the allegation of a severe and debilitating mental condition," is not rendered erroneous by his mistaken inference regarding Dr. Mullen's 2007 decision to stop prescribing Hunter Zoloft. Accordingly, this objection is overruled.

III. "The Magistrate Judge erred in his finding that plaintiff could return to her past work as a cashier."

10

Hunter claims that the ALJ erred by not including the functional limitations outlined by Dr. Sadiq in his hypothetical to the vocational expert. This objection repeats Hunter's first objection that the ALJ used the word "occasionally" rather than "partly" to describe Hunter's ability to bend or stoop and, consequently, did not accurately portray Hunter's limitations. Obj. at 15. This objection is overruled for the same reasons the Court stated above.

Hunter also argues that "[t]he State Agency's non-examining physician's mental RFC assessment in October 2007 reflected a moderately limited ability to maintain attention and concentration for extended periods" and that the ALJ "merely jumped to the conclusion that this translated to being able to do 'simple' work." *Id.* at 16 (emphasis omitted). But this argument does not accurately reflect the record. The same report Hunter references includes the medical consultant's conclusion that Hunter "is not markedly impaired by her mental functioning" and that she "retains the mental capacity for simple work activity." Tr. at 245; *see Young v. Comm'r of Soc. Sec.*, 10-CV-11329, 2011 WL 2601014 *10 (E.D. Mich. May 23, 2011), *adopted*, 10-11329, 2011 WL 2600599 (E.D. Mich. June 30, 2011) (overruling plaintiff's objection where "[a]lthough Plaintiff correctly cites the moderate limitations noted in the assessment, Plaintiff fails to mention that the same assessment also concluded that Plaintiff is 'capable of unskilled work.'") Hunter also surmises that because testing revealed she could not subtract 7 from 100 or handle her own funds, that "testing results would seem to militate against such an individual being able to adequately do the job duties of a cashier[.]" Obj. at 16.

But the ALJ is not required to discuss every piece of evidence in the record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider

11

all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"). And Hunter's disagreement regarding what the evidence suggests is not enough to show the ALJ erred in his assessment that Hunter is capable of doing her past relevant work as a cashier. The objection is overruled.

IV. "The Magistrate Judge erred in concluding that plaintiff has not shown 'good cause' for requesting a 6th Sentence remand for review of new and material evidence."

Hunter argues that this matter should be remanded to the Commissioner for consideration of an intelligence testing and psychosocial assessment that was performed by Dr. Elaine Tripi in May 2012. Hunter claims that this testing is new and material because it "reveals cognitive deficits which can explain some of the gaps in treatment[.]" Obj. at 18. She claims the evidence was not submitted to the ALJ because testing was not performed until she acquired new counsel who recognized she had cognitive defects that needed to be assessed. *Id.*

Under certain circumstances, a district court may remand a case back to an ALJ when the applicant produces evidence outside the record that is "'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). This review is authorized by the "sixth sentence" in 42 U.S.C. § 405(g), and is known as a "sentence six remand." *See* 42 U.S.C. § 405(g). The Sixth Circuit defines the three critical terms as follows:

> For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (internal citations omitted). The burden is on the claimant to show he or she is entitled to a remand. *Id.*

Although the evidence Hunter now presents is new in that it was not acquired until May 2012, Hunter has failed to demonstrate it is material or that there is good cause for failing to acquire and present the evidence to the ALJ. Hunter does not cite any authority to suggest that her counsel's failure to recognize the need for additional testing until after the ALJ issued his decision can constitute good cause. Additionally, Hunter fails to show a reasonable probability that the Secretary would have reached a different disposition of her disability claim if presented with the new evidence. The May 2012 report states that "Ms. Hunter was referred for the purposes of conducting intelligence testing and completing an employability evaluation." Intelligence and Psychosocial Assessment, ECF No. 11-3. But Hunter sought disability benefits based on physical ailments and an affective disorder. She fails to show this new evidence could reasonably lead to a different decision regarding those issues for the time period under consideration, and only alleges that evidence of her cognitive deficits could explain the gaps in her treatment. Thus, she has failed to show the magistrate judge erred in failing to recommend remand and this objection is overruled.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's objections to the magistrate judge's report and recommendation (docket no. 20) are **OVERRULED** and the magistrate judge's report and recommendation (docket no. 17) is **ADOPTED**.

**IT IS FURTHER ORDERED,** that Plaintiff's motion for summary judgment (docket no. 11) is **DENIED** and Defendant's motion for summary judgment (docket no. 16) is **GRANTED**.

**SO ORDERED**.

                                        s/Stephen J. Murphy, III
                                        STEPHEN J. MURPHY, III
                                        United States District Judge

Dated: August 21, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 21, 2013, by electronic and/or ordinary mail.

                                        s/Carol Cohron
                                        Case Manager